IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAENA BALLARD,

               Plaintiff,

    v.

THE DOVER WIPES COMPANY,

               Defendant.

C.A. No. 13-714-RGA

## DEFENDANT'S OPENING BRIEF IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

*OF COUNSEL:*

Michael Aldana
Nicholas O. Anderson
Quarles & Brady LLP
411 East Wisconsin Avenue, Suite 2350
Milwaukee, WI 53202-4426
414-277-5000

Jennifer C. Jauffret (#3689)
jauffret@rlf.com
Lori A. Brewington (#4522)
brewington@rlf.com
RICHARDS, LAYTON, & FINGER, P.A.
One Rodney Square
920 N. King St.
Wilmington, Delaware  19801
(302) 651-7700

*Counsel for Defendant,*
*The Dover Wipes Company*

Dated:  October 30, 2014

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................................... ii

I.      SUMMARY OF ARGUMENT AND STAGE OF PROCEEDINGS ............................ 1

II.     STATEMENT OF UNDISPUTED FACTS .................................................................. 1

      A.      Plaintiff Transferred From A Management Position in Connecticut To A
          New Management Position In Delaware. ............................................................... 1

      B.      Plaintiff Had Significant Management And Administrative Duties. ..................... 2

      C.      Ballard's Resumé Details The Management And Administrative Duties
          She Performed As Specialty Operations Department Manager. ........................... 4

      D.      As Specialty Operations Department Manager Plaintiff Was Not
          Responsible For Performing Physical Or Manual Labor. ..................................... 5

      E.      Subsequent To December 1, 2011, Plaintiff's Annual Salary Was Over
          $100,000. .............................................................................................................. 6

      F.      Plaintiff's Successor Was Responsible For The Same Management Duties
          As Plaintiff. ......................................................................................................... 6

III.    ARGUMENT ................................................................................................................ 7

      A.      Standard Of Review. ............................................................................................ 7

      B.      Plaintiff Fits Several FLSA Exemptions. ............................................................ 8

      C.      Plaintiff's FLSA Claims Fail As A Matter Of Law Because The
          Administrative Exemption Applies To Plaintiff. ................................................. 9

      D.      Plaintiff's FLSA Claims Also Fail As A Matter Of Law Because The
          Executive Exemption Applies to Plaintiff. ........................................................ 12

      E.      Plaintiff Fits The FLSA's Combination Exemption. .......................................... 17

      F.      Plaintiff Has No Viable FLSA Claims For The Final Nine Months Of Her
          Employment Because, During That Time, The FLSA's "Highly
          Compensated Employee" Exemption Applies. ................................................... 18

IV.     CONCLUSION ........................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. BSI Mgmt. Sys. Am., Inc.,*
    523 F. App'x 658 (11th Cir. 2013) .................................................................................................11

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...........................................................................................................7, 8

*Antiskay v. Contemporary Graphics & Bindery Inc.,*
    Case No. 11-7579, 2013 WL 6858950 (D.N.J. Dec. 26, 2013) ..........................................10

*B. F. Goodrich Co. v. Aircraft Braking Sys. Corp.,*
    825 F. Supp. 65 (D. Del. 1993) .........................................................................................7

*Beauchamp v. Flex-in-Gate LLC,*
    357 F. Supp. 2d 1010 (E.D. Mich. 2005) ..........................................................................16

*Fogleman v. Mercy Hosp., Inc.,*
    283 F.3d 561 (3d Cir. 2002) ..............................................................................................7

*Goff v. Bayada Nurses, Inc.,*
    424 F. Supp. 2d 816 (E.D. Pa. 2006) ................................................................................17

*Grace v. Family Dollar Stores, Inc.,*
    845 F. Supp. 2d 653 (W.D.N.C. 2012) .............................................................................15

*Hicks v. Mercedes-Benz U.S. Int'l, Inc.,*
    877 F. Supp. 2d 1161 (N.D. Ala. 2012) ...................................................................13, 14

*Hopkins v. General Electric Co.,*
    89 F. Supp. 997 (D. Mass. 1950) .....................................................................................12

*Kerew v. Emerson Radio & Phonograph Corp.,*
    76 F. Supp. 197 (S.D.N.Y. 1947) .....................................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ...........................................................................................................7

*Rainey v. McWane, Inc.,*
    552 F. Supp. 2d 626 (E.D. Tex. 2008) ......................................................................14, 15

*Schmidt v. Eagle Waste & Recycling, Inc.,*
    599 F.3d 626 (7th Cir. 2010) ............................................................................................17

RLF1 10977003v.1

*Self v. Meritage Homes Corp.*,
    2014 WL 2171468 (S.D. Tex. May 23, 2014) ............................................................. 9

*Spinden v. GS Roofing Products Co., Inc.*,
    94 F.3d 421 (8th Cir. 1996) ............................................................................................... 10

*Swartz v. Windstream Commc'ns, Inc.*,
    429 F. App'x 102 (3d Cir. 2011) ....................................................................................... 9


**OTHER AUTHORITIES**

<u>Statutes</u>

29 U.S.C. § 206(a)(1) ..................................................................................................................... 8

29 U.S.C. § 207 (a)(1) .................................................................................................................... 8

29 U.S.C. § 207 ............................................................................................................................... 8

29 U.S.C. § 213(a)(1) .................................................................................................................. 8, 9

29 U.S.C. § 215(a)(2) ..................................................................................................................... 8

29 U.S.C. § 255(a) .......................................................................................................................... 8


<u>Rules</u>

Fed. R. Civ. P. 56(a) ....................................................................................................................... 7


<u>Regulations</u>

29 C.F.R. § 541.100 .................................................................................................................. 13, 14

29 C.F.R. § 541.100(a)(2) ............................................................................................................ 13

29 C.F.R. § 541.102 ...................................................................................................................... 13

29 C.F.R. § 541.105 ...................................................................................................................... 14

29 C.F.R. § 541.200 ........................................................................................................................ 9

29 C.F.R. § 541.202(b) ................................................................................................................ 11

29 C.F.R. § 541.203(c) .................................................................................................................12

29 C.F.R. § 541.601 .......................................................................................................................18

29 C.F.R. § 541.601(c) ...................................................................................................................18

29 C.F.R. § 541.601(b)(3) ..............................................................................................................18

29 C.F.R. § 541.708 .......................................................................................................................17

29 C.F.R. § 651.100(a)(2) ..............................................................................................................13

29 C.F.R. § 651.105 .......................................................................................................................14

iv

Defendant, The Dover Wipes Company ("Dover Wipes" or the "Company"), by its undersigned counsel, submits this Memorandum in Support of Motion for Summary Judgment and states as follows:

## I.     SUMMARY OF ARGUMENT AND STAGE OF PROCEEDINGS

Plaintiff, Daena Ballard ("Plaintiff" or "Ballard"), filed a Complaint against Dover Wipes seeking, among other things, relief under the Fair Labor Standards Act ("FLSA"). Plaintiff has dismissed, with prejudice, all of her claims other than two FLSA claims.[1] Plaintiff is not entitled to any relief on her remaining claims. Instead, summary judgment is warranted because Plaintiff was, as a matter of law, exempt under the FLSA. Plaintiff's deposition testimony and her own resumé are dispositive. In short, that evidence shows that Plaintiff squarely fits the FLSA's executive, administrative, and combination exemptions, dooming her FLSA claims. Further, because Plaintiff earned more than $100,000 annually for the final nine months of her employment, she also fits the FLSA's "highly-compensated employee" exemption for that time period. The undisputed evidence conclusively establishes that Plaintiff managed her own department, exercised discretion, supervised numerous employees, and that Dover Wipes afforded weight to Plaintiff's input regarding staffing and discipline of the employees she supervised. For these reasons, Dover Wipes is entitled to summary judgment as a matter of law.

## II.     STATEMENT OF UNDISPUTED FACTS

### A.     Plaintiff Transferred From A Management Position in Connecticut To A New Management Position In Delaware.

In June 2005, shortly after she graduated from Rutgers with a Masters of Science in Industrial and Systems Engineering, Plaintiff accepted a job offer from a subsidiary of the

---

[1] D.I. 44, Order Dismissing Counts 1-4 and 7 With Prejudice.

RLF1 10977003v.1

Procter & Gamble Company. Pl. Dep. 28; Ex. 1.[2]  Plaintiff worked in various management positions at the company's Stamford, Connecticut plant from June 2005 to November 2009. Pl. Dep. Ex. 1.  Among other responsibilities at Stamford, Plaintiff managed between 6 and 32 employees, developed and implemented master plans for multiple product lines, and led the facility in preparation for the global quality audit. *Id.*

After learning the Stamford facility would close, Plaintiff applied for and obtained a transfer to The Dover Wipes Company[3] to fill a new position as a Specialty Operations Department Manager. Pl. Dep. 29; 71.  The Dover Wipes Company produces and packages baby wipes and other consumer paper products at its facility in Dover, Delaware. Pl. Dep. 64-65; Hansen Decl. ¶ 3.[4]

### B.  Plaintiff Had Significant Management And Administrative Duties.

Plaintiff started at Dover Wipes on November 1, 2009. Pl. Dep. 230.  As Specialty Operations Department Manager she had significant responsibilities including but not limited to:

- Leading and coaching a team of 10 direct reports.  Pl. Dep. 91-92; Pl. Dep. Ex. 1;

- Overseeing a team of 81 contract employees.  Pl. Dep. Ex. 1;

- Managing the plant's Finished Product Handling team and supervising the three full-time employees who worked in that area.  Pl. Dep. 91;

- Creating a Master Plan for the departments she led.  Pl. Dep. 101;

- Controlling overtime in her department. Pl. Dep. 76-77;

---

[2] All cited pages and exhibits from Plaintiff's deposition are attached to the Declaration of Nicholas Anderson as Exhibit 1.

[3] As set forth in its Corporate Disclosure Statement, Docket Number 12, The Dover Wipes Company is wholly-owned by The Procter & Gamble Company.

[4] Dover Wipes is filing declarations of Julie Hansen, Ryan Brower, and Miguel Wallace in support of its Motion for Summary Judgment.  Those declarations are referred to herein as "Hansen Decl.", "Brower Decl." and "Wallace Decl."

- Managing the safety, quality, morale, staffing, and budget of her departments. Pl. Dep. 95; 243-244; 246;

- Reviewing the performance of her direct reports and deciding whether or not they were on track to meet their goals.  Pl. Dep. 118-119; 145-146;

- Investigating performance issues/shortcomings/misconduct of her direct reports, identifying performance deficiencies of her direct reports, and making conclusions as to whether employee performance was deficient.  Pl. Dep. 123; 128; 154; 160; 164; 169-170;

- Preparing time motion studies to analyze and improve efficiency. Pl. Dep. 105;

- Imposing corrective action on employees in her department, including by sending employees home as a consequence for their failure to follow "lock out/tag out" safety procedures.  Pl. Dep. 154; 164; 181-182;

- Identifying training needed for the employees in her department, coaching employees to ensure they followed the training, and independently developing training to improve work efficiency by team members in her department. Pl. Dep. 114; 142; 145;

- Managing over 50% of the Dover plant's total plant volume.  Pl. Dep. 69.

- Standardizing manufacturing processes and bringing them up to Procter & Gamble corporate standards.  Pl. Dep. 70-71; 74;

- Developing job postings to seek new employees for her department. Pl. Dep. 78;

- Making recommendations to Human Resources as to consequences for her direct reports whose performance was deficient.  Pl. Dep. 132; and

- Interviewing candidates for open positions. Pl. Dep. 85.

3

**C.      Ballard's Resumé Details The Management And Administrative Duties She Performed As Specialty Operations Department Manager.**

Plaintiff produced her resumé in discovery and testified that her resumé is an accurate and truthful description of her job responsibilities. Pl. Dep. 14-15; 242; Ex. 1. The portion of her resumé detailing the duties she had in her management role at Dover Wipes is reproduced, in full, below:

---

Work Experience:
**Specialty Operations Department Manager & Finished Product Handling Leader**
**Procter & Gamble, Dover DE**                          **November 2009 - August 2012**
*Baby Care site producing Pampers Baby Wipes volume for entire North America*

- Led and coached team of 10 P&G employees and 81 contractors who produce 60% of Plant volume
- Collaborated with Site Engineering to deliver Automation project which increased production by 20%
- Created and implemented productivity plan including Run to Target methodology to increase process reliability from 60% to 82% and deliver $400k in annual savings.
- Utilized Organizational Performance Models to determine skills, culture, and reward system needed to deliver Department Master Plan.
- Led Start Up Team that executed Vendor Acceptance testing, Installation, Operation, and Process Qualification and achieved vertical start up of 2 unit ops (Availability>90% in 1 month).
- Coached direct reports on Autonomous Maintenance (AM) and Preventative Maintenance (PM) thereby reducing M&R cost by 30% and reducing breakdowns by 85%.
- Facilitated Unified Problem Solving workshops to find and eliminate root cause of chronic equipment failures thus increasing equipment availability.
- Coached direct reports on Global Start Up Management and assigned them to several department capital projects as part of qualification process. All initiatives delivered on time, at cost, with no impact to production.
- Worked with Contractor leadership on building capability of production crew via creation of skill matrices, qualification cards and quarterly training workshops.
- Implemented Standardized work across all 3 shifts to achieve consistent productivity results
- Trained and qualified Contractor Leadership and P&G techs on TQM to help mitigate off quality product and rework.
- Collaborated with vendors to deliver material cost savings of $100k/year

---

Plaintiff's resumé underscores her core management duties such as leading and assigning work to numerous direct reports and making important business judgments for the Specialty Operations Department.

Plaintiff also produced a screen shot of her profile on the professional networking site LinkedIn.com, where she describes her career and skill set as follows:

> Meticulous, results-oriented engineer with solid experience in manufacturing environments. Background includes Process Improvement, Six Sigma, Lean Manufacturing, Project Management, Technical Evaluations, Cost Control, Quality Engineering, Quality Systems Management and New Product Development and Implementation.

Anderson Decl. Ex. 2.

### D.   As Specialty Operations Department Manager Plaintiff Was Not Responsible For Performing Physical Or Manual Labor.

While Plaintiff was responsible for frequently walking through her Department to observe production processes and provide leadership, she was not expected to perform physical labor as part of her normal duties.  Hansen Decl. ¶ 14; Brower Decl. ¶ 17.  To the extent Ms. Ballard performed physical labor or maintained any machines it was insignificant (less than 5% of her day) and only came up in the course of showing the employees she supervised how to perform their job or, in very rare instances, when all members of Plant's leadership team pitched in to pack boxes in unusual emergency situations (e.g. a major snowstorm).  *Id.*  Plaintiff has no record of the time she spent working on equipment, nor can she estimate that time.  Pl. Dep. 234-236.  Dover Wipes did not pay Ms. Ballard her high salary to personally produce product or to personally maintain machines through her own physical efforts.  *Id.*  Instead she was paid the salary to manage the operations in her Department and use her expertise to make decisions aimed at improving efficiency.  *Id.*

5

E.     **Subsequent To December 1, 2011, Plaintiff's Annual Salary Was Over $100,000.**

From December 1, 2010 to November 30, 2011, Plaintiff received an annual salary of $96,210.00. Pl. Dep. 247-248 and Ex. 16. Effective December 1, 2010, Plaintiff's salary was increased to $100,010.00. Pl. Dep. 247-248 and Ex. 16.[5] Plaintiff continued to receive compensation at that higher rate through the end of her employment on August 8, 2012. *Id.*[6]

F.     **Plaintiff's Successor Was Responsible For The Same Management Duties As Plaintiff.**

On May 1, 2012, Plaintiff went on an approved leave of absence and she was unable to continue in her role as Specialty Operations Department Manager. Brower Decl. ¶ 19; Hansen Decl. ¶ 16. Given the importance of the Specialty Operations Department, Dover Wipes assigned another manager, Miguel Wallace, to serve as the Department's manager. Brower Decl. ¶ 20; Hansen Decl. ¶ 17; Wallace Decl. ¶ 6. The duties and responsibilities of the Specialty Operations Department Manager did not change when Mr. Wallace filled the position. Brower Decl. ¶ 21; Hansen Decl. ¶ 18. Dover Wipes expected Mr. Wallace to perform the same duties that Dover Wipes had expected Plaintiff to perform in that position. *Id.* Mr. Wallace served as Specialty Operations Department Manager for nearly a year and, during that time, devoted 95% of his energies at work to performing management duties. Wallace Decl. ¶ 6; ¶ 14. Like Plaintiff, Mr. Wallace managed a team of between 6 and 13 full-time employees, oversaw work performed by a large number contract employees, managed the personnel, equipment, and processes of at least two manual packing lines, completed performance evaluations, interviewed applicants for the Specialty Operations Department, and made recommendations regarding

---

[5] As set forth below, Plaintiff's salary made her a "highly compensated" employee — under the FLSA — from December 1, 2011 to the end of her employment on August 8, 2012.

[6] Plaintiff currently works as a Quality Assurance Manager for Unilever and, in that position, earns a salary of $120,000 per year. Pl. Dep. 7-8.

6

staffing, promotion, assignment, discipline and discharge. Wallace Decl. ¶ 7. Like Plaintiff, Mr. Wallace was responsible for using his judgment to evaluate productivity and to identify and implement methods for improving efficiency in the Specialty Operations Department but neither Mr. Wallace nor Ms. Ballard was responsible for performing physical or manual labor. Wallace Decl. ¶ 7; ¶ 15.

## III.  ARGUMENT

### A.  Standard Of Review.

A district court should grant summary judgment where the pleadings and evidence before the court "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 566 n.3 (3d Cir. 2002). By its very terms, this standard requires the party opposing summary judgment to set forth specific, material facts indicating that there is a genuine issue for trial – that is, evidence such that a reasonable fact finder could return a verdict for the nonmoving party. *See B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.,* 825 F. Supp. 65, 68 (D. Del. 1993). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-88 (1986). "If the evidence [submitted by a party opposing summary judgment] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249-50. Here, there is no sufficiently probative evidence to support Plaintiff's claims as a matter of law, and therefore summary judgment is proper.

7

**B.      Plaintiff Fits Several FLSA Exemptions.**

Plaintiff alleges that Dover Wipes failed to pay her overtime and failed to pay her for all the hours she worked in violation of the FLSA, 29 U.S.C. §§ 207, 215(a)(2).  (Second Amended Complaint, Counts V - VI).  Plaintiff's claims are non-starters because at all relevant times Plaintiff was exempt from the FLSA's overtime requirements.

The FLSA provides that covered, nonexempt employees must receive at least minimum wage for all hours worked and must receive overtime pay for hours worked over forty hours per week.  *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1).  It has exemptions from those requirements, which are "premised on the belief that the workers exempted typically earned salaries well above the minimum wage, and they were presumed to enjoy other compensatory privileges such as above average fringe benefits and better opportunities for advancement, setting them apart from the nonexempt workers entitled to overtime pay." 69 Fed. Reg. 22122, 22124 (Apr. 23, 2004). The FLSA specifically exempts from its coverage "any employee employed in a bona fide executive, administrative, or professional capacity ... (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor])." 29 U.S.C. § 213(a)(1).  As detailed below, Plaintiff fits several exemptions.

The relevant time period for analyzing an FLSA claim is, at most, 3 years prior to the date a FLSA lawsuit is filed.[7]  Here, Plaintiff filed suit on April 23, 2013 (D.I. 1) so at the most, this Court need only consider whether Plaintiff fits FLSA exemptions during the 27-month between period between April 23, 2010 and the end of Plaintiff's employment on April 8, 2012.

---

[7] A 2-year statute of limitations applies to the recovery of back pay, except in the case of a willful violation, in which case a 3-year statute applies.  29 U.S.C. § 255(a).

C.    **Plaintiff's FLSA Claims Fail As A Matter Of Law Because The Administrative Exemption Applies To Plaintiff.**

Under the *administrative exemption*, anyone employed in a bona fide administrative capacity is exempt from the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1). An administrative employee is someone: (1) compensated on a salary or fee basis at a rate of not less than $455 per week ... exclusive of board, lodging or other facilities; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *Swartz v. Windstream Commc'ns, Inc.,* 429 F. App'x 102, 104 (3d Cir. 2011); *see also* 29 C.F.R. § 541.200.

Here, the undisputed evidence establishes all three elements. First, Plaintiff was at all times compensated at a rate of well over $455 per week. Pl. Dep. Ex. 16.

Second, Plaintiff's primary duty was the performance of non-manual work directly related to management and operation of Dover Wipes' business. Indeed, as Specialty Operations Department Manager, Plaintiff managed an important Department, one that produced 60% of the Dover Plant's total volume, Pl. Dep. Ex. 1, so she was thus in charge of a key component of the operation of Dover Wipes' business. *See Swartz,* 429 F. App'x, 104–05 ("An employee's primary duties are directly related to his employer's management or general business operations when the employee 'perform[s] work directly related to assisting with the running or servicing of the business.'"); *See also, Self v. Meritage Homes Corp.*, C.A. G-11-0070, 2014 WL 2171468, at *5 (S.D. Tex. May 23, 2014) (holding that employees fit the administrative exemption where "[b]ased on Plaintiffs' own description of their work, in their depositions and in [Plaintiff's] resume, the Court concludes that Plaintiffs' primary duty as a Construction Manager—to monitor

9

and oversee the construction of new homes—consisted of non-manual work directly related to and important to [Employer's] general business operations.").

The recent case of *Antiskay v. Contemporary Graphics & Bindery Inc.*, C.A. 11-7579 (NLH/KMW), 2013 WL 6858950 (D.N.J. Dec. 26, 2013) is illustrative. There the court concluded, as a matter of law, that the administrative exemption applied to an employee who "assisted and serviced the actual manufacturing process" and "monitored the overall progress of products" as they moved through production. *Id.* at *12. As compared to the employee in *Antinskay,* Plaintiff had significantly more important administrative responsibilities in her role as Specialty Operations Department Manager. Indeed she:

- Created and implemented productivity plan including Run to Target methodology to increase process reliability from 60% to 82% and deliver $400k in annual savings. [and]

- Utilized Organizational Performance Models to determine skills, culture, and reward system needed to deliver Department Master Plan.

Pl. Dep. Ex. 1. She used her judgment to make important decisions for the Department she managed and the employees who reported to her. *See Spinden v. GS Roofing Prods. Co.,* 94 F.3d 421, 428 (8th Cir. 1996) (holding that plant controller in charge of "essentially a one-man department" was an exempt administrative employee).

Third, Plaintiff's primary duty involved the exercise of discretion and independent judgment with respect to matters of significance. Courts may consider any of the following factors in assessing whether an individual's primary duties required the exercise of discretion and independent judgment:

whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work

10

> that affects business operations to a substantial degree, even if the
> employee's assignments are related to operation of a particular
> segment of the business; whether the employee has authority to
> commit the employer in matters that have significant financial
> impact; whether the employee has authority to waive or deviate
> from established policies and procedures without prior approval;
> whether the employee has authority to negotiate and bind the
> company on significant matters; whether the employee provides
> consultation or expert advice to management; whether the
> employee is involved in planning long- or short-term business
> objectives; whether the employee investigates and resolves matters
> of significance on behalf of management; and whether the
> employee represents the company in handling complaints,
> arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).  Plaintiff's duties were spot on to this exemption:  she created a Master

Plan for the departments she led (Pl. Dep. 101); managed the safety, quality, morale, staffing,

and budget of her Department (Pl. Dep. 95; 243-244; 246); used her judgment and expertise to

standardize the manufacturing processes in her departments to bring them up to corporate

standards (Pl. Dep. 70-71; 74); and created and implemented a productivity plan to deliver

$400,000 in annual savings. (Pl. Dep. Ex. 1).  *See Adams v. BSI Mgmt. Sys. Am., Inc.,* 523 F.

App'x 658 (11th Cir. 2013)(concluding that primary duty of "Supply Chain Security Program

Manager" included exercise of discretion and independent judgment with respect to matters of

significance where her main tasks were running two projects and, in conjunction with those

projects, she was responsible for coming up with the task, activities that needed to take place,

and tasks that needed to be performed, including taking the lead in organizing and managing the

projects).  The controlling regulations provide several examples of work that meets the

administrative exemption, one of which is:

> An employee who leads a team of other employees assigned to
> complete major projects for the employer (such as purchasing,
> selling or closing all or part of the business, negotiating a real
> estate transaction or a collective bargaining agreement, or
> designing and implementing productivity improvements) generally

11

> meets the duties requirements for the administrative exemption,
> even if the employee does not have direct supervisory
> responsibility over the other employees on the team.

29 C.F.R. §541.203(c). Here, Plaintiff completed time motion studies to improve efficiency in

her departments. Pl. Dep. 105. *See Hopkins v. General Electric Co.*, 89 F. Supp. 997 (D. Mass.

1950) (holding that a time study employee in a manufacturing plant was an exempt

administrative employee under FLSA). Plaintiff also led and coached 81 contracted workers,

and was responsible for determining when to direct the contractor to remove contract employees

whose performance did not meet expectations. Pl. Dep. Ex. 1; Brower Decl. ¶ 9. *See Kerew v.*

*Emerson Radio & Phonograph Corp.*, 76 F. Supp. 197 (S.D.N.Y. 1947) (a plant representative

fit the administrative exemption where his duties were to observe work being done by

subcontractors, test equipment, and attend meetings with the subcontractor representative, and

make recommendations concerning various production problems).

In short, Plaintiff's FLSA claims fail because the undisputed evidence — her own

testimony and her own resumé — more than show that the FLSA's administrative exemption

applies.

### D.  Plaintiff's FLSA Claims Also Fail As A Matter Of Law Because The Executive Exemption Applies to Plaintiff.

To grant Dover Wipes' motion for summary judgment, this Court need only conclude that

the administrative exemption applies. No further analysis is required. That said, Plaintiff also

fits the executive exemption. An employee fits the executive exemption under the FLSA where

she: (1) was compensated on a salary basis at a rate of not less than $455 per week; (2) had a

primary duty of managing a customarily recognized department or subdivision; (3) customarily

and regularly directed the work of at least two or more other full-time employees; and (4) where

her suggestions and recommendations as to the hiring, firing, advancement, promotion or any

12

other change of status of other employees was given particular weight. 29 C.F.R. § 541.100. The regulations require that, in order for the executive exemption to apply, the employee's "primary duty" must be management. 29 C.F.R. § 541.100(a)(2). [8]

Plaintiff's duties squarely fit this exemption. First, she earned a salary of well over $455 per week. Pl. Dep. Ex. 16; Brower Decl. ¶ 18; Brower Decl. ¶¶ 7-13. Second, she had the primary duty of managing an important department at Dover Wipes: the Specialty Operations Department. Pl. Dep. Ex. 1. Third, she regularly directed the work of more than two full-time employees. *Id.* Fourth, Dover Wipes gave particular weight to her suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees. Brower Decl. ¶ 15; Hansen Decl. ¶ 13.

Plaintiff's deposition testimony regarding her duties is dispositive. She testified that she: directly supervised numerous employees; managed the entire Special Operations Department; investigated employee misconduct; participated in interviews; evaluated employee performance; disciplined employees; and made recommendations regarding removal of employees. Plaintiff's detailed resumé is the nail in the coffin; it confirms Plaintiff performed significant management duties at Dover Wipes. Pl. Dep. Ex. 1. *See Hicks v. Mercedes-Benz U.S. Int'l, Inc.,* 877 F. Supp. 2d 1161 (N.D. Ala. 2012) (holding that employee who was "group leader" for automobile manufacturer fit the executive exemption where he managed a specific department and where his primary duty was to oversee work and performance of team members, direct their work, and

---

[8] Plaintiff's duties track the regulatory examples of "management" duties, *see* 29 C.F.R. § 541.102, in many ways: (i) the assignment of duties to employees; (ii) the estimation of manpower and adoption and adjustment of work procedures in order to meet production needs; (iii) the handling and resolution of work problems and employee complaints; (iv) the recommendation of changes in work procedures and production methods; (v) the enforcement of company policies and safety regulations; and (vi) the disciplining of employees.

among other things, assess the adequacy of manpower available for the day, observe work of

team members, correct employees when they were not focusing on their work, and resolve

conflicts between team members).

Plaintiff may attempt to distance herself from her own deposition testimony and resumé

by claiming she lacked the authority to make final decisions related to hiring and firing. But that

is not the applicable standard. Instead the standard is whether Dover Wipes gave weight to

Plaintiff's suggestions and recommendations as to the hiring, firing, advancement, promotion or

any other change of status of other employees. 29 C.F.R. § 541.100. The Department of Labor

defines "particular weight" as follows:

> To determine whether an employee's suggestions and
> recommendations are given 'particular weight,' factors to be
> considered include, but are not limited to, whether it is part of the
> employee's job duties to make such suggestions and
> recommendations; the frequency with which such suggestions and
> recommendations are made or requested; and the frequency with
> which the employee's suggestions and recommendations are relied
> upon. Generally, an executive's suggestions and recommendations
> must pertain to employees whom the executive customarily and
> regularly directs. It does not include an occasional suggestion with
> regard to the change in status of a co-worker. An employee's
> suggestions and recommendations may still be deemed to have
> 'particular weight' even if a higher level manager's
> recommendation has more importance and even if the employee
> does not have authority to make the ultimate decision as to the
> employee's change in status.

29 C.F.R. § 541.105. Many different duties and levels of involvement can satisfy this element of

the executive exemption, including, among others, offering personnel recommendations,

involvement in screening applicants for interviews and participation in interviews. *See Rainey v.

McWane, Inc.*, 552 F. Supp. 2d 626, 632 (E.D. Tex. 2008) (finding fourth element satisfied

because plaintiff, a production supervisor, completed employee evaluations and recommended

employee discipline). Here, Plaintiff was actively involved in evaluating the employees she

14

managed through the company's annual Work & Development Plan process in which she determined whether each employee's performance was (or was not) on track. Pl. Dep. 99; 116-119; Ex. 3. At the start of the year Plaintiff worked with each employee she managed to develop an individual Work & Development Plan to set out goals and objectives for that employee. Pl. Dep. 25. Plaintiff was responsible for measuring each employee's progress toward those goals and Plaintiff was responsible for meeting with each employee, one-on-one, several times during the year to ensure the employee's performance stayed on track. Pl. Dep. 96; 145-46.

Plaintiff also participated in interviews to fill positions and supported personnel assignments.

> Q. And you interviewed Pat?
>
> A. Yes, I did.
>
> Q. And the decision was made to assign her to this role then?
>
> A. Yes, it was.
>
> Q. And did you support that decision?
>
> A. At the time, yes, I did.

Pl. Dep. 85. *See Grace v. Family Dollar Stores, Inc.*, 845 F. Supp. 2d 653, 663 (W.D.N.C. 2012), appeal dismissed (July 16, 2013) (finding fourth element satisfied because plaintiff, a store manager, selected applicants for interviews, conducted interviews, and recommended employees for promotions and demotions). Moreover, Plaintiff's own resumé confirms that she had discretion regarding assigning her direct reports to specific projects; she notes she:

> • Coached direct reports on Global Start Up Management and assigned them to several department capital projects as part of qualification process.

15

Pl. Dep. Ex. 1 (emphasis added).  Plaintiff's input was a key consideration when selecting contract employees to work in the departments she supervised:

> Q. So what you were trying to do was help them find the right people who had the right skills or been able to teach them the right skills to do this work, right?
>
> A. Correct.

Pl. Dep. 139.  In addition, Plaintiff initiated an investigation into unsatisfactory work by one of the full-time employees she supervised, Robert Brennan. Pl. Dep. 164.  She recommended that Mr. Brennan be placed on the third step of the Company's corrective action process; the next step in the corrective action process for Mr. Brennan would be discharge.  *Id.*  Dover Wipes Human Resources reviewed and approved Plaintiff's recommendation.  *Id.*  In this respect, Plaintiff's duties were analogous to those found exempt in *Beauchamp v. Flex-N-Gate LLC*, 357 F. Supp. 2d 1010 (E.D. Mich. 2005).  There, in finding that Production Supervisors were exempt executives, the court specifically noted that they were responsible for initiating the disciplinary process for employees they supervised, a process that could lead to a worker's discharge.  *Id.* at 1016.  The same is true here because Plaintiff was responsible for identifying performance shortcomings and/or misconduct of the employees she supervised and initiating the disciplinary process.  Hansen Decl. ¶¶ 8-10 and ¶ 13; Brower Decl. ¶¶ 9-11 and ¶¶ 15-16.  Indeed, Plaintiff exercised her authority to send home employees who engaged in unsafe acts by failing to lock out/tag out equipment:

> Q. There was another incident that you described …where you said you actually saw somebody fail to follow the lock out procedures.
>
> A. Yes.
>
> Q. What happened to that person?

16

> A. Sent him home…he was working on a case, trying to clear a jam in front of me and Kevin Pickering, just went right into the machine, cleared the jam.
>
> …
>
> Q. And then what happened after that? You sent him home?
>
> A. Yes.

Pl. Dep. 181-182.

In short, Plaintiff's FLSA claims fail because she meets the executive exemption. She was compensated via salary at a rate of well over $455 per week, had the primary duty of managing a specific department at Dover Wipes, regularly directed the work of more than two employees, and made recommendations and decisions regarding the change in status of employees she managed.

## E. Plaintiff Fits The FLSA's Combination Exemption.

A separate basis for finding Plaintiff exempt is the "combination exemption." Section 29 C.F.R. § 541.708 provides that "[e]mployees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption. Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption." *See Goff v. Bayada Nurses, Inc.*, 424 F. Supp. 2d 816, 824 (E.D. Pa. 2006)(granting employer's motion for summary judgment and concluding that plaintiff, a manager at a nursing home, "would also be exempt if her position is viewed as both executive and administrative"); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626 (7th Cir. 2010)(holding that employee was exempt because, while employee's duties did not primarily

involve one particular exempt category, the employee's other duties fell under a different exempt category).

**F.      Plaintiff Has No Viable FLSA Claims For The Final Nine Months Of Her Employment Because, During That Time, The FLSA's "Highly Compensated Employee" Exemption Applies.**

Employees earning in excess of $100,000 per year are exempt from the FLSA's overtime compensation requirement provided such employees "customarily and regularly" perform "any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee" under the FLSA. 29 C.F.R. § 541.601 (emphasis added).  As the regulation explains:

> A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties. Thus, a highly compensated employee will qualify for exemption if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D of this part. An employee may qualify as a highly compensated executive employee, for example, if the employee customarily and regularly directs the work of two or more other employees, even though the employee does not meet all of the other requirements for the executive exemption under § 541.100.

29 C.F.R. § 541.601(c).  Here, Plaintiff's employment subsequent to December 1, 2011, fits squarely under the "highly compensated" employee exemption, because it is undisputed that Plaintiff earned an annual salary of more than $100,000. Pl. Dep. 247-248 and Ex. 16.[9]  To meet the "highly compensated" exemption Plaintiff need only have regularly performed one exempt

---

[9] The fact that Plaintiff did not work for Dover Wipes for a full year following her salary increase is irrelevant.  29 C.F.R. § 541.601(b)(3) ("An employee who does not work a full year for the employer, either because the employee is newly hired after the beginning of the year or ends the employment before the end of the year, may qualify for exemption under this section if the employee receives a pro rata portion of the minimum amount established in paragraph (a) of this section, based upon the number of weeks that the employee will be or has been employed.")

duty, but here Plaintiff's consistently performed multiple exempt duties: she directed the work of two or more other employees (Pl. Dep. 91-92; Pl. Dep. Ex. 1); she exercised discretion and judgment by leading key projects such as by creating a Master Plan for her Department (Pl. Dep. 101), by creating and implementing a productivity plan to increase process reliability and deliver $400,000 in annual savings (Pl. Dep. Ex. 1), by identifying and implementing cost-savings strategies for the Plant's Backstand Area (Hansen Decl. ¶ 20), and by using her judgment to analyze and identify ways for Dover Wipes to use a reduced number of contracted forklift drivers (Brower Decl. ¶ 23).

As a practical matter, this means that, even if Plaintiff did not fit other exemptions (she certainly does as detailed above), she has no FLSA claim for the period of her employment subsequent to December 1, 2011.

## IV.   CONCLUSION

For the foregoing reasons, Dover Wipes respectfully requests that the Court grant its motion for summary judgment and dismiss Plaintiff's FLSA claims in their entirety, with prejudice.

<table>
<tr><td></td><td>/s/ Lori A. Brewington</td></tr>
<tr><td></td><td>Jennifer C. Jauffret (#3689)</td></tr>
<tr><td>OF COUNSEL:</td><td>Jauffret@rlf.com</td></tr>
<tr><td></td><td>Lori A. Brewington (#4522)</td></tr>
<tr><td>Michael Aldana</td><td>Brewington@rlf.com</td></tr>
<tr><td>Nicholas O. Anderson</td><td>Richards, Layton & Finger, P.A.</td></tr>
<tr><td>Quarles & Brady LLP</td><td>One Rodney Square</td></tr>
<tr><td>411 East Wisconsin Avenue, Suite 2350</td><td>920 N. King Street</td></tr>
<tr><td>Milwaukee, WI 53202-4426</td><td>Wilmington, Delaware 19801</td></tr>
<tr><td>414-277-5000</td><td>(302) 651-7700</td></tr>
</table>

*Attorneys for The Dover Wipes Company*

Dated:  October 30, 2014

RLF1 10977003v.1

## CERTIFICATE OF SERVICE

I certify that on October 30, 2014, I caused a copy of the **Defendant's Opening Brief in Support of Motion for Summary Judgment** to be served via electronic mail, and electronically filed same with the Clerk of the Court using the CM/ECF system, which will sent notification of such fling to:

> Jeffrey K. Martin, Esquire
> Martin & Associates, P.A.
> 1508 Pennsylvania Avenue
> Wilmington, DE 19806

*/s/ Lori A. Brewington*
Lori A. Brewington (#4522)
Brewington@rlf.com

RLF1 10977003v.1