IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAENA BALLARD,

    Plaintiff,

v.      C.A. No. 13-714-RGA-MPT

THE DOVER WIPES COMPANY

    Defendant.

## REPORT AND RECOMMENDATION

### I. Introduction

In this action alleging violations of the Fair Labor Standards Act ("FLSA") brought by plaintiff, Daena Ballard ("plaintiff"), against The Dover Wipes Company ("defendant" or "Dover Wipes"), who moves for summary judgment pursuant to FED. R. CIV. P. 56(a). For the reasons stated below, the motion should be granted.

### II. Background

Plaintiff is a Delaware resident and a former employee of defendant, an Ohio corporation that produces and packages baby wipes and other consumer paper products at a facility in Dover, Delaware.[1]

Following her graduation from Rutgers University with a Masters of Science in Industrial and Systems Engineering, plaintiff began working on June 13, 2005, as a Process Engineer for The Procter & Gamble Company ("P&G"), the parent corporation of defendant, in Stamford, CT.[2] From June 2005 to November 2009, plaintiff was

---

[1] D.I. 19 at 2; D.I. 46 at 2.
[2] D.I. 19 at 3; D.I. 46 at 1-2.

employed in various management positions at the Stamford plant.³ Her responsibilities included managing between 6 to 32 employees, developing master plans for multiple product lines, and preparing for the global quality audit.⁴ In February 2009, plaintiff was hired for the position of Specialty Operations Department Manager at defendant's plant in Delaware.⁵ That employment began on November 1, 2009.⁶

While employed by defendant, her responsibilities included: overseeing a team of 81 contract employees; managing and supervising the plant's Finished Product Handling Team consisting of three full-time employees; creating a master plan, identifying training needs for employees, controlling overtime, developing job postings to seek new employees, and interviewing candidates for open positions in her department; reviewing direct reports regarding performance and determining whether goals would be met; investigating performance issues and identifying deficiencies of direct reports; imposing corrective action and making recommendations to Human Resources regarding consequences for deficient performance; and managing over 50% of the total plant volume.⁷

Beginning in December 2009, product orders increased. Plaintiff informed management about her concerns on inadequate staffing to execute high performance production.⁸ In January 2010, plaintiff was assigned to lead the startup of a $1 million project; none of her previous responsibilities were re-assigned or de-prioritized because

---

³ D.I. 46 at 2.
⁴ *Id.*
⁵ *Id.*
⁶ *Id.*
⁷ *Id.* at 2-3.
⁸ D.I. 19 at 4.

2

of her new position.[9] Although plaintiff was able to facilitate the startup of this new project, she was required to be on call twenty-four hours per day, seven days per week.[10] In May 2011, plaintiff advised management that she needed to be reassigned due to increased stress and anxiety.[11] In September 2011, plaintiff began a one-month approved disability leave.[12] Upon her return to work, plaintiff notified management that since her two year commitment was almost done, she wanted another assignment.[13] Management advised it would not support plaintiff's request.[14] In February 2012, plaintiff was issued a Performance Improvement Plan, warning she risked a grade of "not meeting expectations" for her upcoming annual performance review in June.[15] In March 2012, plaintiff informed management that she was pregnant, and on May 2, 2012, she began approved disability leave due to complications with the pregnancy.[16] When plaintiff returned to work on June 5, 2012, she was immediately reissued a Performance Improvement Plan and notified that her position was reassigned to another manager.[17] On August 6, 2012, management informed plaintiff that she was "no longer a fit" for employment and she was terminated the following day.[18]

## III. Procedural History

Plaintiff filed a charge of discrimination with the Delaware Department of Labor

---

[9] Id.
[10] Id. at 4-5.
[11] Id. at 5.
[12] Id.
[13] Id. at 5-6.
[14] D.I. 19 at 6.
[15] Id.
[16] Id.
[17] Id.
[18] Id. at 7.

3

and the Equal Employment Opportunity Commission ("EEOC") on October 15, 2012.[19] On January 24, 2013, plaintiff received a right to sue letter from the EEOC.[20]

On April 24, 2013, plaintiff initially sued Procter & Gamble Distributing LLC alleging claims of gender, racial, national origin, and pregnancy discrimination, violations of the Family Medical Leave Act, and violations of FSLA for failure to pay for overtime and all hours worked.[21] On May 21, 2013, plaintiff amended her complaint, substituting Dover Wipes and the Proctor & Gamble Company ("P&G") as defendants.[22] On August 28, 2013, the parties dismissed P&G with prejudice, and on October 28, 2014, dismissed all counts with prejudice, except the FLSA claims.[23] On October 30, 2014, Dover Wipes moved for judgment in its favor on the FLSA claims.[24]

## IV. Standard of Review

Summary judgment is appropriate if the "movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[25] Following discovery, FED R. CIV. P. 56(a) mandates judgment against the party who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[26] When a party fails to make such a showing, "there can be no 'genuine issue as

---

[19] Id.
[20] D.I. 19 at 7.
[21] D.I. 1.
[22] D.I. 8. Plaintiff moved to amend her complaint on June 13, 2013, which was granted on July 3, 2014. See D.I. 13, 18.
[23] See D.I. 22, 44.
[24] D.I. 45.
[25] FED. R. CIV. P. 56(a).
[26] Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

4

to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[27] A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[28]

The moving party bears the initial burden of identifying portions of the record which demonstrate the absence of a genuine issue of material fact.[29] A party may move for summary judgment with or without supporting affidavits.[30] Therefore, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence supporting the nonmoving party's case."[31]

If the moving party demonstrates an absence of material fact, the nonmoving party must then show "that the fact cannot be or is genuinely disputed" through appropriate evidence.[32] If the nonmoving party bears the burden of proof at trial, it "must go beyond the pleadings in order to survive a motion for summary judgment."[33] That party "may not rest upon the mere allegations or denials of [its] pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[34] At the summary judgment stage, the court is not to "weigh the evidence and determine the

---

[27] *Id.* at 323.
[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[29] *Celotex*, 477 U.S. at 323.
[30] *Id.*
[31] *Id.* at 325.
[32] FED. R. CIV. P. 56(c).
[33] *Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).
[34] *Anderson*, 477 U.S. at 248.

5

truth of the matter, but to determine whether there is a genuine issue for trial."[35] The threshold inquiry therefore is "determining whether there is a need for trial - whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[36]

## V.  Discussion

Under the FLSA, "no employer shall employ any of his employees . . . for a workweek of longer than forty hours unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate at which [she] is employed."[37] An action for unpaid wages and unpaid overtime under the FLSA must be filed within two years after the cause of action accrued, except where the matter arose out of a willful violation, then a three year limitations period applies.[38]

Certain employees, however, are exempted from the FLSA, including those who are "employed in a bona fide executive, administrative, or professional capacity."[39] An executive employee, under the FLSA, includes one who is:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and

---

[35] Id. at 249.
[36] Id. at 250.
[37] 29 U.S.C. § 207(a)(1).
[38] Id. § 255(a).
[39] Id. § 213(a)(1).

6

> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[40]

An administrative employee means any employee who is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[41]

Furthermore, under the combination exemption of the FLSA, "an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify. In other words, work that is exempt under one section of this part will not defeat the exemption under any other section."[42]

Another exemption under the FLSA is for a highly compensated employee "with total annual compensation of at least $100,000 . . . if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee."[43] The rationale is:

> A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties. Thus, a

---

[40] 29 C.F.R. § 541.100(a).
[41] Id. § 541.200(a).
[42] Id. § 541.708.
[43] Id. § 541.601(a).

7

> highly compensated employee will qualify for exemption if
> the employee customarily and regularly performs any one or
> more of the exempt duties or responsibilities of an executive,
> administrative or professional employee . . . . An employee
> may qualify as a highly compensated executive employee,
> for example, if the employee customarily and regularly
> directs the work of two or more other employees, even
> though the employee does not meet all the other
> requirements for the executive exemption under § 541.100.[44]

The employer bears the burden of proving an employee satisfies any exemption.[45]

### 1. Executive Exemption

Dover Wipes argues plaintiff's FLSA claim fails because all four elements of the executive exemption are met.[46] Plaintiff disputes that the fourth element has been satisfied and that Dover Wipes has demonstrated that she had the authority to hire or fire employees.[47] Plaintiff asserts that she could not remove an employee from her department, citing that she was overruled by her direct supervisor when she tried to fire Robert Brennan ("Brennan").[48] Dover Wipes contends that this single incident is not determinative of the weight attributed by management to her recommendations because plaintiff recommended that Brennan be placed at a discipline level just below termination in the company's corrective action process, which human resources reviewed and approved.[49] Dover Wipes further points out that according to plaintiff's

---

[44] *Id.* § 541.601(c).

[45] *See Sander v. Light Action, Inc.*, 525 F. App'x 147, 150 (3d Cir. 2013); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974) ("[T]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof.").

[46] D.I. 46 at 12; D.I. 54 at 8.

[47] D.I. 53 at 8.

[48] *Id.* at 9.

[49] D.I. 54 at 9.

8

testimony, she interviewed prospective employees and recommended whether they be hired.[50]

As stated above, the fourth element of the executive exemption requires an employee have authority to hire or fire other employees, or that particular weight is given to her suggestions regarding hiring, firing, promotion, advancement, or other changes of employment status.[51] "'[O]ther change of status' means any 'tangible employment action' . . . such as 'reassignment with significantly different responsibilities.'"[52] Tangible employment action is defined as "'constitut[ing] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"[53] In determining whether an employee's recommendations are given "particular weight," the court considers whether making such recommendations is part of the employee's job description or duties, whether the recommendations "are made or requested frequently, and whether they are frequently relied upon."[54] The recommendations must concern employees whom the executive "customarily and regularly directs." The executive's recommendations may still "have particular weight even if a higher level management's recommendation has more importance and even if the [executive] does not have the authority to make the ultimate

---

[50] D.I. 46 at 15.
[51] *See In re Enterprise Rent-a-Car Wage & Hour Employ't Practices Litig.*, C.A. No. 07-1687, 2012 WL 4356762, at *15 (W.D. Pa. Sept. 24, 2012) (citing 29 C.F.R. § 541.100(a)(4)).
[52] *Id.* (quoting Fed. Reg. 22, 122, 131 (Apr. 23, 2004)).
[53] *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).
[54] *Id.*

9

decision as to the employee's change in status."[55]

A tangible employment action occurred when Brennan was placed on the third level of Dover Wipes's corrective action process, which meant any further violations would result in his termination, and prevented him from receiving a pay level increase for a minimum of twelve to eighteen months.[56] Such disciplinary action constitutes a tangible employment action because it resulted in a significant change in benefits. Plaintiff and another supervisor recommended that Brennan be removed as a B-Team technician.[57] Dover Wipes, instead, placed Brennan on probationary status. Its decision, however, does not mean Dover Wipes did not afford particular weight to plaintiff's recommendation. In fact, plaintiff's report by detailing Brennan's negligence resulted in the employment action. Further, plaintiff's supervisors, Ryan Brower ("Brower") and Julie Hansen ("Hansen") confirmed that they valued her suggestions regarding promotion, assignment, discipline, and discharge for the employees that she supervised.[58] This evidence is satisfies the fourth element of the executive exemption.

Although plaintiff now claims that "she had no *opportunity* to hire employees,"[59] she clearly was *authorized* to hire employees. According to her deposition, in December 2010 to early 2011 time frame, plaintiff was authorized to hire for three open positions of Customization Operations Tech.[60]

Q. Was there – so this was one opening for this position in

---

[55] *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 558 (3d Cir. 2006).
[56] See D.I. 48, Ex. 1 plaintiff's deposition at Ex. 9.
[57] *Id.*
[58] See D.I. 49 at ¶ 15; D.I. 50 at ¶ 13.
[59] D.I. 53 at 9 (emphasis added).
[60] D.I. 48, Ex. 1 plaintiff's deposition at 88-89.

10

December?

A. Yes.

Q. Was this filled?

A. Nope.

Q. Why?

A. Nobody applied.

Q. So then, the position that we saw that Pat Wagner ended up taking, which was about three months later, that's the same position; is that what you are telling us?

A. Yes.

Q. Except now there was two positions that you had been given authority to hire for?

A. Yes.

Q. Or to assign for?

A. Yes.

Q. You had actually asked for three, right?

A. Yes.

Q. And, eventually, you were given three? Eventually, you had more than three techs, correct?

A. Yes.[61]

Plaintiff's testimony further satisfies the fourth element. Therefore, the executive exemption applies.

2. **Administrative Exemption**

---

[61] *Id.*

Dover Wipes also contends plaintiff's FLSA claim fails because all three elements of the administrative exemption are met.[62] In particular, Dover Wipes asserts the second element, that plaintiff's primary duty was the performance of non-manual work directly related to the management and operation of business, is undisputed.[63] Dover Wipes notes, as manager of the Specialty Operations Department, which produced 60% of the plant's total volume, plaintiff was responsible for a key department of the business operations.[64] Dover Wipes relies on the affidavits of plaintiff's supervisors, Brower and Hansen, who confirmed that 95% of plaintiff's duties were confined to managerial, non-manual work.[65] Furthermore, plaintiff's own resume includes only exempt responsibilities, similar to the job descriptions contained in Brower and Hansen's affidavits.[66]

Plaintiff argues the second element is not satisfied because whether her primary duty consisted of non-manual work, is disputed.[67] According to plaintiff's deposition testimony, because of staffing shortages, she was needed to perform manual labor, such as operating and fixing the machinery, on the production floor for long periods of time.[68] Plaintiff claims her testimony is in direct conflict with Brower's statements, and since Brower did not work at Dover Wipes until June 1, 2011, he could not know what her actual duties were during her first year-and-a-half of employment.[69] Plaintiff argues

---

[62] D.I. 46 at 9; D.I. 54 at 6-7.
[63] *Id.*
[64] D.I. 46 at 9.
[65] D.I. 54 at 7; *see also* D.I. 49 at ¶ 13; D.I. 50 at ¶ 12.
[66] D.I. 54 at 7.
[67] D.I. 53 at 10.
[68] *Id*; *see* D.I. 48, Ex. 1 plaintiff's deposition at 230-32.
[69] D.I. 53 at 10.

12

Hansen's affidavit is inadequate because "there is no indication [ ] whether she personally observed [plaintiff's] work and, if so, how much time [plaintiff] spent on the production floor."[70] As a result, plaintiff maintains since the second element is not met, the exemption is not applicable.[71]

The administrative exemption, as set forth in § 541.200(a)(2), states the employee's "primary duty" must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."[72] Generally, a "primary duty involves over 50% of the employee's work time . . . yet, flexibility is appropriate when applying this rule."[73] To be "directly related to the management or general business operations" of the employer means the "type of work performed by the employee" is "directly related to assisting with the running and servicing of the business, as distinguished, for example, from working on a manufacturing production line . . . ."[74] Such work "includes, but is not limited to, work in functional areas such as . . . quality control; . . . research; safety and health; personnel management; . . . and similar activities."[75] Furthermore, "an employee's primary duty must include the exercise of discretion and independent

---

[70] Id.

[71] Id. at 11.

[72] 29. C.F.R. § 541.200(a)(2).

[73] O'Bryant v. City of Reading, 197 F. App'x 134, 137 (citing Lott v. Howard Wilson Chrysler-Plymouth, 203 F.3d 326, 331 (5th Cir. 2000)).

[74] 29. C.F.R. § 541.201(a); see also Swartz v. Windstream Commc'ns, Inc., 429 F. App'x 102, 104-05 (3d Cir. 2011) (quoting 29 U.S.C. § 541.201(a)) ("An employee's primary duties are directly related to his employer's management or general business operations when the employee 'perform[s] work directly related to assisting with the running or servicing of the business.'").

[75] 29 U.S.C. § 541.201(b).

13

judgment with respect to matters of significance."[76] In its analysis, the court considers the following:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business . . .; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management . . . .[77]

Here, plaintiff's resume describes only exempt, non-manual work during her time at the Dover plant, which required application of her discretion and independent judgment:

> Led and coached team of 10 P&G employees and 81 Contractors who produce 60% of Plant volume;
>
> Collaborated with Site Engineering to deliver Automation project which increased production by 20%;
>
> Created and implemented productivity plan including Run to Target methodology to increase process reliability from 60% to 82% . . .;
>
> Utilized Organizational Performance Models to determine skills, culture and reward system needed to deliver Department Master Plan;
>
> Led Start Up Team that executed Vendor Acceptance testing, Installation, Operation and Process Qualifications . . .;
>
> Coached direct reports on Autonomous Maintenance and

---

[76] 29 C.F.R. § 541.202(a).
[77] Id. § 541.202(b).

14

> Preventative Maintenance . . .;
>
> Facilitated Unified Problem Solving workshops to find and eliminate root cause of chronic equipment failure . . .;
>
> Coached direct reports on Global Startup Management and assigned them to several department capital projects as part of qualification process;
>
> Worked with Contractor leadership on building capability of production crew via creation of skill matrices, qualification cards and quarterly training workshops;
>
> Implemented Standardized work across all 3 shifts to achieve consistent productivity results;
>
> Trained and qualified Contractor Leadership and P&G techs on TQM to help mitigate off quality product and rework;
>
> Collaborated with vendors to deliver material cost savings of $100k/year.[78]

Hansen's affidavit is also relevant. As Plant Manager at the Dover facility from 2008 until 2012, Hansen stated that plaintiff "devoted approximately 95% of her energies"[79] to performing exempt, non-manual work, and she was not "responsible for performing physical or manual labor."[80] Hansen "expected Ms. Ballard to frequently walk through her Department to observe production processes and provide leadership . . .," but "she was not expected to perform physical labor as part of her normal duties."[81] Furthermore, "to the extent Ms. Ballard performed physical labor or maintained machines it was insignificant . . . and only came up in the course of showing one of the

---

[78] D.I. 48, Ex. 1 plaintiff's deposition at Ex. 1.
[79] D.I. 50 at ¶ 12.
[80] Id. at ¶ 13.
[81] Id. at ¶ 14.

employees she managed how to perform their job(s) . . . ."[82] Hansen confirmed "Dover Wipes did not pay Ms. Ballard her high salary . . . to personally produce product or to personally maintain machines through her own physically efforts. Instead she was paid . . . to manage the operations in her Department and to use her expertise to make decisions aimed at improving efficiency."[83]

Dover Wipes, as the moving party, has demonstrated the absence of material fact that plaintiff's primary duty consisted of non-manual work. Plaintiff has failed to show this fact "cannot be or is genuinely disputed."[84] Plaintiff's argument that Hansen's declaration is unreliable, is unconvincing and refuted by her representations in her resume, and therefore insufficient to demonstrate a genuine issue of material fact. Since Dover Wipes has established the second element, the administration exemption applies.

### 3. Highly-Compensated Employee Exemption

Dover Wipes maintains the highly-compensated employee exemption applies for plaintiff's employment from December 1, 2011 until her termination date on August 7, 2012, because she earned an annual salary over $100,000.[85] Plaintiff does not address nor refute this argument. In light of the prior findings above and since plaintiff's annual salary during that period was $100,010.00, the exemption applies.[86]

## VI. Order and Recommendation Disposition

---

[82] *Id.*
[83] *Id.*
[84] FED. R. CIV. P. 56(c).
[85] D.I. 46 at 18; *see* D.I. 48, Ex. 1 plaintiff's deposition at Ex. 1.
[86] *See* D.I. 48, Ex. 1 plaintiff's deposition at Ex. 1.

Consistent with the findings contained herein,

IT IS RECOMMENDED that Dover Wipes' motion for summary judgment under FED. R. CIV. P. 56(a) (D.I. 45) be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), FED. R. CIV. P. 72(a), and D. DEL. LR 72.1, any objections to the Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same. Any response shall be limited to ten (10) pages.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is found on the Court's website (www.ded.uscourts.gov.)

Date: May 4, 2015          /s/  Mary Pat Thynge
                           UNITED STATES MAGISTRATE JUDGE